**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | |
|---|---|
| **BRIDGOT DONEE CAPPS,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. CBD-17-2438 |
| **NANCY A. BERRYHILL,** | ) |
| Acting Commissioner, Social Security Administration | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Bridgot Donee Capps ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 16) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 18). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, and **REVERSES** and **REMANDS** this matter for further proceedings consistent with this opinion. A separate order will issue.

1

## I. Procedural Background

On February 9, 2013, Plaintiff filed for DIB under Title II. R. 19. On June 30, 2016, Plaintiff filed for SSI under Title XVI. R. 19. For both filings, Plaintiff alleged disability beginning February 1, 2013. R. 19. Plaintiff alleged disability due to chronic pain, depression, bulging disks in lower and upper back, diabetes, high cholesterol, high blood pressure, arthritis in both knees, melanoma, and "stomach problems." R. 22, 218. Plaintiff's claims were initially denied on August 27, 2013, and upon reconsideration on December 10, 2013. R. 19. An administrative hearing was held on September 3, 2015 (R. 19, 42-79). Plaintiff was granted an opportunity to submit additional medical evidence. R. 19. On June 13, 2016, the administrative law judge ("ALJ") requested a medical expert review of the additional evidence along with accompanying interrogatories. R. 19, 1403. The expert responded with his assessment on July 9, 2016. R. 19, 1405-18. On September 19, 2016, Plaintiff's claims were denied. R. 16. Plaintiff sought review by the Appeals Council, which concluded on June 26, 2017, that there was no basis for granting the Request for Review. R. 1-6.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2015). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot

overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x, at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d, at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2012). If she is doing such activity, she is not disabled. If she is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If she does not have such impairment or combination of impairments, she is not disabled. If she does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If she does have such impairment, she is disabled. If she does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If she can perform such work, she is not disabled. If she cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If she can perform other work, she is not disabled. If she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ must present a "narrative discussion describing how the evidence supports each

4

conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

### III. Analysis

In this matter, the ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 20-34. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since February 1, 2013, the alleged onset date. R. 21. At step two, under 20 C.F.R. § 404.1520(c) and § 416.920(c), the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical, thoracic and lumbar spine, mild right shoulder degenerative joint disease, mild bilateral knee degenerative joint disease, history of bilateral carpal tunnel syndrome with surgical release in 2012, depressive disorder, anxiety disorder, and a history of cocaine abuse in remission since January 2015." *Id.* at 22. The ALJ stated that the listed impairments were severe because they, "constitute[d] more than slight abnormalities and have had more than a minimal effect on the claimant's ability to perform basic work activities for a continuous period of 12 months." *Id.* In step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. *Id.* At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except that:

> [Plaintiff] is further limited to frequently handling and fingering; occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders, ropes, or scaffolds; avoiding concentrated exposure to extreme temperatures wetness, and workplace hazards; carrying out simple tasks in two-hour increments; having occasional interaction with coworkers and supervisors but avoiding direct interaction with the general public; and, adapting to simple changes in a routine work setting.

R. 25. The ALJ then determined that Plaintiff was not capable of performing any of her past relevant work as a medical biller. R. 33. At step five, however, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that accommodate Plaintiff's known limitations, and accordingly concluded that Plaintiff was not disabled within the meaning of the Social Security Act. R. 33-34.

On appeal, Plaintiff requests that the Court grant summary judgment in her favor or, in the alternative, remand this matter to the Social Security Administration for a new administrative hearing. For the reasons set forth below, the Court **REVERSES** the ALJ's decision in part and **REMANDS** the matter for further proceedings.

### A. *The ALJ's explanation for finding Plaintiff had moderate difficulties in maintaining concentration, persistence and pace was insufficient.*

Plaintiff alleges that the ALJ provided an insufficient explanation for how she determined that Plaintiff had only moderate difficulties in maintaining concentration, persistence and pace, thus preventing judicial review. Pl.'s Mot. 15-16. For the reasons that follow, the Court agrees.

Where it is determined a claimant has a mental impairment, an ALJ is required to evaluate and document its severity using an additional "special technique." 20 C.F.R. § 404.1520a(a). This multistep process requires the ALJ to:

> "[S]pecify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings." The ALJ must also document "a specific finding as to the degree of limitation in each of" the four areas of functional limitation listed in § 404.1520a(c)(3). In the first three areas of functional limitations— (a) activities of daily living, (b) social functioning, and (c) concentration, persistence, or pace—the ALJ must rate the degree of limitation using "the following five-point scale:

> None, mild, moderate, marked, and extreme." The ALJ must rate the fourth functional area—(d) episodes of decompensation—using "the following four-point scale: None, one or two, three, four or more." Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment. If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities.

*Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (internal citations omitted). When rating the degree of functional limitation, the ALJ will do so "based on the extent to which the claimant's impairment 'interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis.'" *Brocato v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-2540, 2017 WL 3084382, at *2 (D. Md. July 19, 2017) (citing 20 C.F.R. § 404.1620a(c)(2)). An ALJ must then document the application and conclusions of this special technique as follows:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4). In *Patterson*, the ALJ came to a determination on the plaintiff's mental impairments without rating the "four areas of functional limitation listed in § 404.1520a(c)(3) according to the prescribed scale" or explaining, "how he reached his conclusions about the severity of the mental impairment." *Patterson*, 846 F.3d at 662. The Fourth Circuit held that it was the responsibility of the ALJ to apply and document his use of the special technique, and failure to do so was "rarely, if ever, harmless error." *Id.* ("'Administrative determinations are required to be made in accordance with certain procedures which facilitate judicial review.' We cannot fill in the blanks for the ALJ in the first instance." (internal citations omitted)).

7

Unlike the ALJ in *Patterson*, in the case at hand the ALJ documented step-by-step her application of the special technique in evaluating Plaintiff's mental impairment, *see* R. 21-32, and came to a specific determination on Plaintiff's degree of limitation in each of the four areas of functional limitations listed in § 404.1520a(c)(3). R. 24. Specifically, the ALJ determined that Plaintiff had "moderate difficulties" in maintaining concentration, persistence and pace, and provided the following explanation:

> [Plaintiff] has trouble with concentration, persistence, and pace because she experiences fluctuating moods and issues with attention/concentration. However, [Plaintiff] is capable of performing her [activities of daily life], she cared for her children or elderly mother, she drives without difficulty, she uses a computer, she completes word puzzles and crosswords, and she attends medical appointments alone.

R. 24 (internal citations omitted). Plaintiff argues that this explanation is insufficient to permit the Court to review the ALJ's determination and cites to this Court's decision in *Brocato v. Commissioner, Social Security Administration*. Pl.'s Mot. 15. In *Brocato*, this Court found the ALJ's explanation determining that a plaintiff had a moderate degree of difficulty with concentration, persistence and pace was "cursory," indicating it was "based exclusively on [the plaintiff's] reported issues in concentration, since the remaining sentences in the analysis [ ] suggest[ed] mild or no limitations." *Brocato*, 2017 WL 3084382, at *3.

In the instant case, the ALJ's brief explanation includes specific examples and cites to medical and therapeutic sources of evidence for objective support. R. 24. However, none of the sources the ALJ specifically cited to support her finding of the degree of limitation contain information about Plaintiff's computer use, the fact Plaintiff cares for her elderly mother, or that she engages in word puzzles or crosswords. A review of the record as a whole reveals some support for the assertions by the ALJ. *See, e.g.*, R. 620 (stating Plaintiff does "word searches"). However, there is also conflicting information that the ALJ does not resolve in this explanation.

8

For example, the ALJ states that Plaintiff "drives without difficulty," (R. 24), however, she also states in the narrative discussion that Plaintiff "can drive but only short distances." R. 26. The ALJ provides no additional explanation as to why being limited to short distances is "without difficulty" or how it affects the degree of someone's ability to maintain concentration, persistence or pace. Additionally, the ALJ cited to a medical source that discusses Plaintiff's physical condition and pain, leaving the Court to extrapolate how this gives support to the ALJ's determination that Plaintiff has moderate difficulties in maintaining concentration, persistence or pace. *See* R. 1066. Such activities are beyond the role of the Court in these proceedings. *Hays*, 907 F.2d at 1456. Without providing a more detailed explanation for how the cited evidence support her conclusions, the ALJ's explanation leaves the Court "unable to ascertain whether the ALJ truly believed [Plaintiff] to have moderate difficulties in concentration, persistence, and pace, instead of mild, or no difficulties, and how those difficulties restrict her RFC . . . ." *Brocato*, 2017 WL 3084382, at *3. As such, the ALJ failed to include sufficient explanation for this Court to review her determination that Plaintiff had moderate difficulties in concentration, persistence and pace. The Court hereby orders this matter remanded for further proceedings to include an explanation of how the degree of limitation in concentration, persistence and pace was determined, including citations to specific evidence in the record and details for how this information supports the ALJ's determination, if not immediately clear.

### B. *The ALJ's RFC assessment and corresponding narrative discussion did not meet the standards set forth in* **Mascio** *and* **Monroe***.*

Plaintiff alleges that under the *Mascio* decision, the ALJ's RFC assessment limiting Plaintiff to "simple tasks in two-hour increments" did not account for the moderate difficulties in maintaining concentration, persistence and pace that the ALJ found Plaintiff to have at step three of the sequential evaluation. Pl.'s Mot. 13 (citing R. 25); Pl.'s Response 3-4. Commissioner

argues that the ALJ supplied an additional explanation in her narrative for why the limitations included in the RFC assessment addressed Plaintiff's moderate difficulties in concentration, persistence and pace, thus satisfying the *Mascio* requirements. Comm'r's Mot. 5. The Court finds that the limitations in the RFC assessment and the subsequent explanation are not sufficient to meet the *Mascio* standard, and accordingly reverses the ALJ's decision in part and remands this matter for further proceedings.

The functional area of concentration, persistence, or pace

> [R]efers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(3). Under *Mascio*, the Fourth Circuit held that an RFC assessment must account for the ALJ's step three finding of moderate limitations in concentration, persistence or pace beyond limiting a claimant to performing only "simple, routine tasks." *Mascio v. Colvin,* 780 F.3d 632, 638 (4th Cir. 2015). This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). Subsequent cases have addressed various ALJs' attempts to include corresponding limitations in their RFC assessments that address moderate limitations in concentration, persistence or pace. This Court has been clear that a restriction to "simple tasks" or some variation on that phrase does not meet the requirement. *See, e.g.*, *Wilson v. Comm'r, Soc. Sec.*

*Admin.*, No. CV ADC-17-2666, 2018 WL 3941946, at *5 (D. Md. Aug. 16, 2018) (limiting to "simple, routine tasks" insufficient); *see also, e.g.*, *McDonald v. Comm'r. Soc. Sec. Admin.*, No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (limiting to "simple, routine, and repetitive tasks" insufficient). When a durational limitation is included, such limitations must consider that the normal 8-hour workday already includes breaks approximately every two (2) hours and provide further explanation as to how that restriction "adequately accounts for a moderate limitation in the ability to stay on task" or else it does not meet the *Mascio* requirements. *Steele v. Comm'r, Soc. Sec.*, No. MJG-15-1725, 2016 WL 1427014, at *4 (D. Md. Apr. 11, 2016) (citing SSR 96-9P); *see also Puryear v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-3386, 2016 WL 4444660, n.2 (D. Md. Aug. 23, 2016) (same); SSR 96-9P, 1996 WL 374184 (S.S.A.) (noting that a normal workday already includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals). Limitations on interactions with other individuals—whether they be with coworkers, supervisors or the general public—also do not address concentration, persistence and pace limitations. *See Wilson*, 2018 WL 3941946, at *5 (listing cases). This is because such limitations "impose[] a restriction that corresponds with [an] ALJ's finding of moderate difficulties in social functioning, not concentration, persistence, or pace." *Id.* (citing *Henry v. Berryhill*, No. BPG-17-57, 2018 WL 558839, at *3 [D. Md. Jan. 25, 2018]). Similarly, limiting changes in work setting does not account for concentration, persistence or pace limitations. *See, e.g.*, *McDonald*, 2017 WL 3037554, at *4 (concluding "a RFC restriction that [the claimant could] perform 'simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision'" was insufficient to meet *Mascio* requirements).

11

In the instant matter, the ALJ found that Plaintiff suffered from "moderate difficulties" in concentration, persistence and pace. R. 24. In her RFC assessment, the ALJ included language that restricted Plaintiff to work that involved "carrying out simple tasks in two-hour increments; having occasional interaction with coworkers and supervisors but avoiding direct interaction with the general public; and, adapting to simple changes in a routine work setting." R. 25. While the ALJ set forth a detailed recitation of the evidence she used to come to her RFC determination, the case law is clear that the limitations she included in the RFC assessment— even in combination—are insufficient to meet the *Mascio* requirement. *See, e.g.*, *Bey v. Berryhill*, No. CV CBD-17-2292, 2018 WL 3416944, at *3-4 (D. Md. July 12, 2018) (holding that limiting a plaintiff "to simple, routine tasks and occasional contact with supervisors, coworkers, and the public" and "low stress work, defined as occasional decisionmaking [sic] and occasional changes in the work setting" was insufficient to meet *Mascio* standard); *see also, e.g.*, *Wilson*, 2018 WL 3941946, at *5; *McDonald*, 2017 WL 3037554, at *4; *but see Henig v. Colvin*, No. TMD-13-1623, 2015 WL 5081619, at *12 (D. Md. Aug. 26, 2015) (citations omitted) (citing to a number of cases in which the court found the standard established in *Mascio* was met through low-production language).

Commissioner argues that the case law disqualifying the limitation to "two-hour increments" simply requires "further explanation" in order to meet the *Mascio* standard. Comm'r's Mot. 5 (emphasis removed). Commissioner points to the ALJ's explanation and asserts that this is sufficient to explain "why the mental restrictions in the RFC assessment adequately account[ ] for [Plaintiff's] moderate limitation in concentration, persistence, or pace." *Id.* While the ALJ's narrative discussion is admirable in its review of available evidence, Commissioner's argument is unpersuasive. As discussed *supra*, the Court has previously

considered all of the various types of limitations articulated in the instant RFC assessment and deemed them insufficient to meet *Mascio* requirements both individually and in combination. *See, e.g.*, *Bey*, 2018 WL 3416944, at *3-4. Therefore, as it is currently articulated the ALJ's RFC assessment contains the equivalent of no limitation for Plaintiff's moderate difficulties in concentration, persistence and pace that the ALJ determined at step three. The fact that the ALJ may have supported these restrictions with additional explanation is a moot point. Further, it cannot be said that the ALJ intended her explanation to meet the exception articulated in *Talmo*. The ALJ here clearly intended to include some sort of specific restriction for concentration, persistence or pace in her RFC assessment. *See* R. 30 ("Therefore, overall, the aforementioned results on clinical testing and examination fail to support greater mental limitations *than those articulated* in the residual functional capacity."). Unfortunately, the ALJ had the erroneous belief that the limitations outlined in her RFC assessment would do so. The ALJ was required to include either additional limitations in the RFC assessment that are acceptable under the *Mascio* standard **or** a narrative explanation for why limitations in concentration, persistence or pace are not required. *Talmo,* 2015 WL 2395108, at *3. Commissioner cannot change the purpose of the ALJ's narrative discussion *post hoc* to meet the requirements of *Mascio*.

The Court notes that the ALJ's narrative discussion herein was nearly sufficient. Specifically, while the ALJ came to a determination concerning the types of limitations to put in Plaintiff's RFC assessment and cited to significant evidence in the record to support this determination, the narrative discussion is missing a necessary logical step. An ALJ must provide adequate support in her narrative discussion to "build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). An ALJ must also present a "narrative discussion describing how the evidence supports each conclusion"

13

and must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.). For guidance, the Court directs Commissioner's attention to its decisions in *Steele v. Commissioner, Social Security Administration*, and *Puryear v. Commissioner, Social Security Administration*.

In *Steele*, the ALJ found a claimant to have moderate limitations in concentration, persistence or pace and limited that claimant to "carry[ing] out simple tasks in two hour increments." *Steele*, 2016 WL 1427014 at *1. Upon review, this Court determined that two-hour breaks failed to account for moderate limitations in concentration, persistence or pace and that the ALJ needed to include more explanation in her decision for the RFC assessment to meet the *Mascio* standard. *Id.* at *4. Similarly, the ALJ in *Puryear* included a 2-hour incremental limitation in her RFC assessment after she found the claimant had moderate difficulties in concentration, persistence or pace. *Puryear*, 2016 WL 4444660, at *2. This time, the ALJ included a parenthetical explanation in the language of the RFC assessment immediately following the limitation. *Id.* (noting the ALJ's RFC assessment stated: "the claimant can carry out simple to moderately complex tasks in 2-hour increments (which can be accommodated by regularly scheduled breaks)"). While this acknowledged that daily breaks in a normal work setting occur every two (2) hours and this was sufficient for the claimant's difficulties in concentration, persistence and pace, the narrative discussion contained no explanation supporting this assessment. *See id.* at n.2.

Here, the ALJ provided significant evidentiary support for her determination in her narrative discussion. The ALJ found that Plaintiff "has a history of depression, anxiety and a history of cocaine abuse in remission." R. 29. The ALJ noted that prior to the onset date of her alleged disability, Plaintiff needed only nominal medication and counseling. *Id.* Further, the

ALJ noted clinical findings concerning Plaintiff were "unremarkable" except for depression and anxiety. *Id.* Following the onset date of her alleged disability, the ALJ noted Plaintiff received treatment and medication for depression and anxiety. *Id.* However, while Plaintiff self-reported severe symptoms of depression and anxiety, the ALJ found clinical findings indicated Plaintiff was stable with medication and had no other abnormalities. *Id.* The ALJ also noted how Plaintiff was able to socialize with friends and family, managed to function for at least a year without receiving treatment, and doctors described her as "fully oriented" and as "denying anxiety and/or depression." R. 29-30. While the Court finds the evidence cited by the ALJ does support a credibility determination that Plaintiff has a pattern of over-embellishing her symptoms, the ALJ does not specifically draw out this conclusion in her narrative discussion. This leaves a logical gap between the ALJ's findings of fact and *why* those findings support her conclusion regarding Plaintiff's limitations in maintaining concentration, persistence or pace. It is up to the ALJ to "[s]how [her] work." *Patterson*, 846 F.3d at 663. Therefore, the ALJ's RFC assessment as it is currently articulated does not meet the standard laid out in *Mascio*.

## IV. Conclusion

Based on the foregoing, the Court **REVERSES** and **REMANDS** this matter with specific instructions for the ALJ to: (1) provide a more detailed and supported explanation as to how she came to the determination of the degree of limitation of Plaintiff's ability to maintain concentration, persistence or pace so as to permit judicial review, and (2) include a limitation for Plaintiff's difficulties in maintaining concentration, persistence and pace—if any found by the ALJ in step three—or provide an explanation for why such a limitation is not necessary. In making this decision, the Court offers no opinion on the ALJ's ultimate determination that Plaintiff is not disabled within the meaning of the Social Security Law.

September 26, 2018

/s/
Charles B. Day
United States Magistrate Judge

CBD/clc